## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **MICHAEL R. CHAVIS,** | |
| Plaintiff, | |
| v. | Case No. 1:20-cv-00638 (TNM) |
| **UNITED STATES DEPARTMENT OF JUSTICE,** | |
| **DRUG ENFORCEMENT ADMINISTRATION,** | |
| Defendants. | |

## <u>MEMORANDUM OPINION</u>

Michael Chavis is an investigator helping Ricardo Sanchez, Jr., challenge his murder conviction. Chavis submitted a Freedom of Information Act ("FOIA") request seeking records on Sanchez and his co-defendants in connection with Sanchez's legal challenges. Chavis sues the Drug Enforcement Administration and the Department of Justice (collectively, the "Government"), challenging the DEA's decision to redact information and withhold documents under various FOIA exemptions that protect privacy and law enforcement interests.

The parties cross-move for summary judgment. They dispute whether the DEA adequately searched for records responsive to the FOIA request, properly explained its decisions to withhold material under various FOIA exemptions, and complied with its obligation to release all reasonably segregable material. For the following reasons, the Court will deny Chavis's summary judgment motion and grant the Government's motion.

**I.**

Ricardo Sanchez, Jr. received life and death sentences for the murders of the Escobedo family, including three- and four-year-old children.  *See United States v. Troya*, 733 F.3d 1125, 1129–30 (11th Cir. 2013); Decl. of Michael Chavis ("Chavis Decl.") ¶¶ 3–4, ECF No. 14-1.[1] "These murders took place to protect a large-scale drug trafficking ring involving drugs, guns and extensive violence."  *Troya*, 733 F.3d at 1130.  Sanchez continues to challenge his conviction.  Chavis Decl. ¶ 5.  He argues in part that the prosecution "failed to disclose exculpatory and impeachment material pursuant to its obligation."  *Id.*

The DEA is an agency within the DOJ tasked with enforcing federal drug laws and regulations in the United States.  *See* Decl. of Angela D. Hertel ("Hertel Decl.") ¶ 5, ECF No. 12-1.  "Several DEA agents interviewed witnesses and conducted [an] investigation into [Sanchez's] charged offenses."  Chavis Decl. ¶ 6.  The lead DEA agent also "coordinated and directed the investigation by several federal, state, and local law enforcement agencies."  *Id.*

Michael Chavis is an investigator with the Federal Defender Services of Eastern Tennessee, which represents Sanchez in his post-conviction proceedings.  *See* Defs.' Statement of Material Facts Not in Genuine Dispute ("Defs.' SOMF") ¶ 1, ECF No. 10-2; Chavis Decl.

---

[1] Chavis offers a "Counterstatement of Material Facts."  Pl.'s Combined Opp'n & Cross-Mot. Summ. J. at 6–10, ECF No. 14-2.  But some of his proposed facts lack any citations to the record, which the local rules and this Court require.  *See* LCvR 7(h)(1) ("Each motion for summary judgment shall be accompanied by a statement of material facts as to which the moving party contends there is no genuine issue, *which shall include references to the parts of the record relied on to support the statement*." (emphasis added)); Standing Order ¶ 14(B)(i), ECF No. 3 (requiring moving party to "attach a statement of material facts for which that party contends there is no genuine dispute, *with specific citations to those portions of the record* upon which the party relies in fashioning the statement." (emphasis added)).  The Court declines to rely on those purported facts that have no record citations.  *See Jones v. Kirchner*, 835 F.3d 74, 83 (D.C. Cir. 2016) ("[J]udges are not like pigs, hunting for truffles buried in briefs or in the record[.]" (cleaned up)); *Jeffries v. Barr*, 965 F.3d 843, 860–61 (D.C. Cir. 2020) ("This Court is not in the habit of doing parties' lawyering for them, and we decline to take up that task now.").

¶¶ 1–2.[2]  Chavis submitted a FOIA request on behalf of Sanchez to the DEA.  *See* Defs.' SOMF ¶ 2; Chavis Decl. ¶ 2.

The FOIA request sought "all public documents, files, records, etc. pertaining to any investigation, arrest, indictment, conviction, sentencing, incarceration, and/or parole of" Sanchez and his co-defendants.[3]  Defs.' SOMF ¶ 2; Pl.'s Combined Opp'n & Cross-Mot. Summ. J. ("Pl.'s Cross-Mot.") Ex. B, ECF No. 14-2.  The DEA responded that it "required either a release authorization or proof of death for each co-defendant in order to release their information." Defs.' SOMF ¶ 3; Pl.'s Cross-Mot. Ex. C, ECF No. 14-3.  It explained that "without such consent or an overriding public interest, those records were categorically exempt from disclosure, and DEA was not required to conduct a search for the requested records."  Defs.' SOMF ¶ 4.  Chavis provided a Certification of Identity for Sanchez, but he did not submit a

---

[2]  Chavis did not respond to the Government's proposed statement of material facts, as required. *See* LCvR 7(h)(1) (requiring opposition to include "separate concise statement" of disputed material facts); Standing Order ¶ 14(B)(i) (ordering party opposing summary judgment to "submit a statement enumerating all material facts which the party contends are genuinely disputed and thus require trial"); *id.* ¶ 14(B)(iv) ("The party responding to a statement of material facts must respond to each paragraph with a **correspondingly numbered paragraph**, indicating whether that paragraph is admitted or denied.").

The Court can, and will, treat the Government's proposed facts as admitted in considering the summary judgment motions.  *See* LCvR 7(h)(1) ("In determining a motion for summary judgment, the Court may assume that facts identified by the moving party in its statement of material facts are admitted, unless such a fact is controverted in the statement of genuine issues filed in opposition to the motion."); Standing Order ¶ 14(B)(v) (same); *Jackson v. Finnegan, Henderson, Farabow, Garrett & Dunner*, 101 F.3d 145, 154 (D.C. Cir. 1996) (holding that the "district court properly deemed as admitted the material facts set forth in the [defendant's] . . . statement of material facts not in dispute" when the plaintiff did not comply with procedural rules).

[3]  The FOIA request for one co-defendant sought "all documents," not just "public documents." Defs.' SOMF ¶ 2a.

release authorization or proof of death for any of the co-defendants.  *Id.* ¶¶ 5–6; Pl.'s Cross-Mot. Ex. D, ECF No. 14-4.

The DEA maintains all criminal enforcement investigative records in its Investigative Reporting and Filing System ("IRFS").  Defs.' SOMF ¶ 21.  The IRFS includes all "DEA law enforcement intelligence and investigative information maintained on an individual."  *Id.* ¶ 22.  It also includes "[r]ecords from other DEA record systems that are related to an individual's involvement in, or association with, a DEA intelligence operation or civil, criminal, or regulatory investigation."  *Id.* ¶ 23.  The DEA relies on the Narcotics and Dangerous Drugs Information System ("NADDIS")—an electronic data index—to identify records in IRFS across all DEA offices.  *Id.* ¶¶ 24–25.  The DEA can input into NADDIS an individual's name, social security number, or birthdate to help locate records within IRFS.  *Id.* ¶¶ 26–27.  "A search of IRFS using NADDIS is a worldwide search for DEA records, including records maintained at field offices, because intelligence and investigative records generated across all DEA offices are indexed into NADDIS."  *Id.* ¶ 30.

In response to Chavis's FOIA request, the DEA conducted a NADDIS search using Sanchez's name and birthdate to identify records in IRFS.  *Id.* ¶ 31.  This search identified two files related to Sanchez.  *Id.* ¶ 32.  DEA-Miami searched these files and forwarded the records for processing.  *Id.* ¶ 35.  The DEA did not search for records on Sanchez's co-defendants "because [Sanchez] did not provide the necessary documentation."  Hertel Decl. ¶ 27.

The DEA ultimately withheld 229 pages and released 107 pages to Chavis.  Defs.' SOMF ¶¶ 10, 13.  It withheld information and documents under FOIA Exemptions 6, 7(C), 7(D), 7(E), and 7(F).  *Id.* ¶ 16.  Chavis does not contest 94 redacted pages, and he withdrew "objections related to information excluded because it constituted an unwarranted invasion of [one of the co-

defendant's] privacy" and "[Chavis's] office had not submitted the necessary waiver." *Id.* ¶¶ 19–20.

The DEA provided a *Vaughn* index that identifies the FOIA exemptions under which "responsive records were withheld; describes the content of the documents to the extent possible; and specifies the bases for the invoked exemptions." *Id.* ¶ 37; *see also* Defs.' Mot. Summ. J. ("Defs.' Mot.") Ex. I, ECF No. 10-11. It also submitted a declaration from Angela Hertel—the Unit Chief for DEA's FOIA Privacy Act Unit—to explain the DEA's search process and FOIA withholdings. *See* Hertel Decl.

Chavis sues the Government for wrongfully withholding records (Counts I and III) and for failing to conduct a reasonable search (Counts II and IV) under FOIA and the Privacy Act of 1974. *See* Compl. ¶¶ 20–55, ECF No. 1.

Both parties cross-move for summary judgment. Their motions are ripe for disposition.[4]

## II.

To succeed at summary judgment, the moving party must show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The party seeking summary judgment has the initial burden to identify those portions of the record that show the lack of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986). Once that burden is met, the non-moving party must "designate specific facts showing that there is a genuine issue for trial." *Id.* at 324 (cleaned up). The Court construes the evidence "in the light most favorable to the non-moving party." *Brubaker v. Metro. Life Ins. Co.*, 482 F.3d 586, 588 (D.C. Cir. 2007).

---

[4] This Court has subject matter jurisdiction under 28 U.S.C. § 1331. *See also* 5 U.S.C. § 552(a)(4)(B), (a)(6)(c)(i) (granting jurisdiction over FOIA claims to U.S. District Court for the District of Columbia).

"[T]he vast majority of FOIA cases can be resolved on summary judgment." *Brayton v. Off. of the U.S. Trade Representative*, 641 F.3d 521, 527 (D.C. Cir. 2011). At summary judgment, the "agency must show beyond material doubt [] that it has conducted a search reasonably calculated to uncover all relevant documents." *Weisberg v. DOJ*, 705 F.2d 1344, 1351 (D.C. Cir. 1983). An agency withholding records under a FOIA exemption "bears the burden of proving the applicability of [the] claimed exemptions." *ACLU v. DOD*, 628 F.3d 612, 619 (D.C. Cir. 2011). "[A]n agency's justification for invoking a FOIA exemption is sufficient if it appears logical or plausible." *Id.* (cleaned up). "To successfully challenge an agency's showing that it complied with the FOIA, the plaintiff must come forward with 'specific facts' demonstrating that there is a genuine issue with respect to whether the agency has improperly withheld extant agency records." *Span v. DOJ*, 696 F. Supp. 2d 113, 119 (D.D.C. 2010).

The withholding agency may rely on declarations, a *Vaughn* index, or both to meet its burden. *See Judicial Watch, Inc. v. FDA*, 449 F.3d 141, 146 (D.C. Cir. 2006). And the Court affords this evidence a "presumption of good faith." *SafeCard Servs., Inc. v. SEC*, 926 F.2d 1197, 1201 (D.C. Cir. 1991).

### III.

The FOIA statute "mandates the disclosure of documents held by a federal agency unless the documents fall within one of nine enumerated exemptions." *U.S. Fish & Wildlife Serv. v. Sierra Club, Inc.*, 141 S. Ct. 777, 785 (2021). For FOIA requests seeking law enforcement records—like those here—there are several exemptions at play. Not surprisingly, FOIA's default preference for government transparency is preempted by concerns about disclosing sensitive information in the law enforcement arena. *See Machado Amadis v. DOJ*, 388 F. Supp. 3d 1, 15

(D.D.C. 2019), *aff'd,* 971 F.3d 364 (D.C. Cir. 2020) ("When a law enforcement agency invokes Exemption 7, it warrants greater deference than do like claims by other agencies." (cleaned up)).

"Exemption 7 protects from disclosure 'records or information compiled for law enforcement purposes,' but only to the extent that the production of such records would cause an enumerated harm." *Wilson v. DEA*, 414 F. Supp. 2d 5, 13 (D.D.C. 2006) (quoting 5 U.S.C. § 552(b)(7)). This law enforcement exemption broadly covers, among other things, (i) information that "could reasonably be expected to constitute an unwarranted invasion of personal privacy," (Exemption 7(C))[5]; (ii) information that "could reasonably be expected to disclose the identity of a confidential source" or "information furnished by a confidential source," (Exemption 7(D)); (iii) information that "would disclose techniques and procedures for law enforcement investigations or prosecutions, or would disclose guidelines for law enforcement investigations or prosecutions if such disclosure could reasonably be expected to risk circumvention of the law," (Exemption 7(E)); and (iv) information that "could reasonably be expected to endanger the life or physical safety of any individual" (Exemption 7(F)). 5 U.S.C. § 552(b)(7).

The parties' cross-motions raise three issues: (A.) whether the DEA adequately searched for responsive records; (B.) whether the DEA properly justified its redactions and withholdings under FOIA's law enforcement (and privacy) exemptions; and (C.) whether the DEA complied with its obligations to produce all reasonably segregable material. The Court addresses each in turn.

---

[5] FOIA Exemption 6 similarly protects "personnel and medical files and similar files the disclosure of which would constitute a clearly unwarranted invasion of personal privacy." 5 U.S.C. § 552(b)(6).

**A.**

Chavis requested "all public documents, files, records, etc. pertaining to any investigation, arrest, indictment, conviction, sentencing, incarceration, and/or parole of" Sanchez and his co-defendants.  Defs.' SOMF ¶ 2; Pl.'s Cross-Mot. Ex. B.  The Government asserts that its search was reasonably calculated to identify responsive records.  *See* Mem. P. & A. in Supp. Defs.' Mot. Summ. J. at 7–11, ECF No. 10-1.[6]  Chavis disagrees.  He claims that the DEA's search was too narrow and that the DEA overlooked responsive records.  Pl.'s Cross-Mot. at 14–18.  The Court agrees with the Government.

"[T]he adequacy of a FOIA search is generally determined not by the fruits of the search, but by the appropriateness of the methods used to carry out the search."  *Iturralde v. Comptroller of Currency*, 315 F.3d 311, 315 (D.C. Cir. 2003).  An agency need only "demonstrate that it has conducted a search reasonably calculated to uncover all relevant documents."  *Weisberg v. DOJ*, 745 F.2d 1476, 1485 (D.C. Cir. 1984) (cleaned up).  The issue is "not whether there might exist any other documents possibly responsive to the request, but rather whether the *search* for those documents was *adequate*."  *Id.* (emphasis in original).  An agency declaration that describes the search in reasonable detail and "aver[s] that all files likely to contain responsive materials (if such records exist) were searched" is enough.  *Mobley v. CIA*, 806 F.3d 568, 581 (D.C. Cir. 2015) (cleaned up).

More, "several courts in this Circuit have upheld categorical refusals to search for records of specified third parties where such searches would reveal only protected information."  *Wright v. DOJ*, No. 14-558 (ESH), 2015 WL 1153372, at *4 (D.D.C. Mar. 16, 2015) (citing cases).

---

[6]  All page citations refer to the page numbers that the CM/ECF system generates.

Consider *Blackwell v. FBI*, 646 F.3d 37 (D.C. Cir. 2011) (Kavanaugh, J.).  There, the plaintiff argued that the FBI's search was inadequate because it "did not search its databases using the names of the individuals he had specifically mentioned in his request." *Id.* at 42.  The FBI represented that it would "not conduct searches on third parties in the absence of proofs of death or privacy waivers from these individuals, or an articulation by a requester of a strong public interest that outweighs any privacy interest." *Id.* (cleaned up).  The court agreed with the FBI, reasoning that the search for these individuals "would have added only information that [it] ha[d] concluded is protected by Exemption 7(C)." *Id.*  So the FBI "was correct in declining to search for such documents." *Id.*

The DEA similarly declined to search for records on Sanchez's co-defendants.  The Court does not understand Chavis to challenge the DEA's decision not to search for these records.  He appears to admit as much in his reply brief.  *See* Pl.'s Reply to Defs.' Opp'n ("Pl.'s Reply") at 2, ECF No. 17 ("This query necessarily begins with the question of which documents are relevant, *i.e.* what documents did Plaintiff seek?  Limiting that query to only Mr. Sanchez [citing to his Certificate of Identity] reveals that Plaintiff sought . . . .").  Chavis also withdrew his objections to withholdings based on one of the co-defendant's privacy interests "because it constituted an unwarranted invasion of [the co-defendant's] privacy, as [Chavis's] office had not submitted the necessary waiver."  Defs.' SOMF ¶ 20.

If Chavis tries to challenge the decision not to search for records related to Sanchez's co-defendants—which is far from apparent from his briefs—the Court rejects that challenge.  The DEA "required either a release authorization or proof of death for each co-defendant in order to release their information." *Id.* ¶ 3.  Chavis did not provide either. *Id.* ¶ 6.  So the DEA did not search for responsive records.  *See* Hertel Decl. ¶ 27 ("[B]ecause [Chavis] did not provide the

necessary documentation regarding the other individuals who were the subjects of his other requests, the DEA did not search for records regarding those individuals.").

The DEA asserts that any information on these co-defendants was categorically exempt under FOIA Exemptions 6 and 7(C). *Id.* ¶ 54; *see also* Defs.' Mot. Ex. B at 2, ECF No. 10-4 ("disclosure of law enforcement records concerning any individual could reasonably be expected to constitute an unwarranted invasion of personal privacy" and is exempt under Exemption 7(C) without consent, proof of death, or an overriding public interest). The DEA claims that release of this information "would constitute a clearly unwarranted invasion of [their] privacy" and Chavis "articulated no legitimate public interest in the information." Hertel Decl. ¶ 58. Chavis offers no reason to doubt the DEA's representations. Nor does he proffer any "overriding public interest" to disclose these documents. Indeed, he does not dispute the DEA's position that the "records were categorically exempt from disclosure, and DEA was not required to conduct a search for the requested records" absent "an overriding public interest." Defs.' SOMF ¶ 4. The DEA thus had no obligation to search for records on Sanchez's co-defendants. *Accord Blackwell*, 646 F.3d at 42.

The Court next turns to the FOIA request for Sanchez, which seeks "all public documents, files, records, etc. pertaining to any investigation, arrest, indictment, conviction, sentencing, incarceration, and/or parole" for him. Defs.' SOMF ¶ 2; Pl.'s Cross-Mot. Ex. B. The DEA ran a NADDIS search using Sanchez's name and birthdate to identify responsive records in the IRFS, which yielded two files. Defs.' SOMF ¶¶ 31–32. DEA-Miami reviewed these files and forwarded the records for processing. *Id.* ¶ 35. The DEA represents that it "conducted a complete search of the files for records pertaining to" Sanchez, and that the search "was conducted in good faith and was reasonable and complete." Hertl Decl. ¶ 26.

The DEA's search was "reasonably calculated" to identify relevant documents.  The IRFS contains "all DEA law enforcement intelligence and investigative information maintained on an individual," as well as "[r]ecords from other DEA record systems that are related to an individual's involvement in, or association with, a DEA intelligence operation or civil, criminal, or regulatory investigation."  Defs.' SOMF ¶¶ 22–23.  And the DEA uses NADDIS to identify records in IRFS across all DEA offices.  *Id.* ¶¶ 24–25.  So a "search of IRFS using NADDIS is a worldwide search for DEA records, including records maintained at field offices."  *Id.* ¶ 30.

Another judge in this district recently found the same search sufficient in *Kowal v. DOJ*, 464 F. Supp. 3d 376 (D.D.C. 2020).  There, an employee for the Federal Defender for the Middle District of Florida submitted the same FOIA request for Sanchez's co-defendant, Daniel Troya.[7]  *Id.* at 379–80.  As here, the DEA looked for responsive records in the IRFS through a NADDIS search of Troya's name and birthdate.  *Id.* at 380.  Relying on a similar DEA declaration, the court found the search reasonably calculated.  *Id.* at 382–83.

In *McKneely v. DOJ*, the DEA conducted a NADDIS search using the plaintiff's name, social security number, and birthdate.  132 F. Supp. 3d 44, 51 (D.D.C. 2015), *aff'd sub nom. McKneely v. DEA*, No. 15-5317, 2016 WL 3040985 (D.C. Cir. May 5, 2016).  The court found this search reasonably calculated to identify responsive records and granted summary judgment for the Government.  *Id.* at 50–51; *accord Smith v. DOJ*, 115 F. Supp. 3d 48, 54 (D.D.C. 2015) (finding that the DEA NADDIS search using plaintiff's name and social security number was "reasonably calculated to locate records pertaining to plaintiff").

---

[7]  Chavis also sought the same documents related to Troya.  *See* Defs.' SOMF ¶ 2a. (seeking "all documents, files, records, etc. pertaining any investigation, arrest, indictment, conviction, sentencing, incarceration, and/or parole of (3) Daniel Troya (a/k/a 'Homer')"); *see also* Pl.'s Cross-Mot. Ex. B.

Chavis, though, attacks the DEA's search on three grounds.  The Court finds all three challenges unpersuasive.

*First*, Chavis contends that the DEA's search was too narrow.  He argues that the DEA should not have "focus[ed] on individual personal identifying information."  Pl.'s Cross-Mot. at 16.  Chavis claims that the search as constructed "would not identify all documents related to the investigation of the Escobedo murders, i.e., the information sought by [him]."  *Id.*  Not so.

As the FOIA requester, Chavis must identify the documents he wants.  *See* Pl.'s Reply at 3 ("[I]f the language of [Chavis's] request is inadequate to inform [the Government] that he seeks records related to the investigation and not to Mr. Sanchez, the person . . . then the fault lies with [him].").  If he sought all documents on the investigation into the Escobedo murders, he could have made that request.  He did not.  It is unrealistic to expect the DEA (or any federal agency) to read between the lines and hunt for a class of documents that a plaintiff has not identified as potentially relevant.  Such a cryptic request also ignores the fact that FOIA paralegals and other administrators—not DEA agents or detectives—set up and execute the FOIA search.

To impose such a burden distracts these agencies from their primary responsibility—here, to "enforce the controlled substance laws and regulations of the United States."  Hertel Decl. ¶ 5.  That is why "the adequacy of an agency's response to a FOIA request is measured by a standard of reasonableness."  *McGehee v. CIA*, 697 F.2d 1095, 1100 (D.C. Cir. 1983).  The DEA met its burden here.  Chavis correctly suggests that "it is incumbent upon [him] to make a new request more specifically seeking documents related to the investigation of the Escobedo murders."  Pl.'s Reply at 3.

*Second*, Chavis claims that "there are a minimum of two systems of records the DEA has access to, yet only one system was searched." Pl.'s Cross-Mot. at 17. Chavis does not elaborate on the records supposedly in this other database that might address his request. And he relies only on a reference to "two DEA Privacy Act systems of records" mentioned in other cases. *Id.* (cleaned up). This is unpersuasive. The Court is unconvinced that *facts* noted in other cases are properly part of the summary judgment record here. *See* Fed. R. Civ. P. 56(c)(1)(A) (requiring party to cite "particular parts of materials *in the record*" (emphasis added)); *id.* 56(c)(3) ("The court need consider only the cited materials, but it may consider other materials *in the record*." (emphasis added)). This is especially so when considering technology systems, which can quickly change or be updated.

Even if the Court should consider this evidence, it is not enough. The DEA does not dispute that other record systems exist. But it represents that any "[r]ecords from other DEA record systems that are related to an individual's involvement in, or association with, a DEA intelligence operation or civil, criminal, or regulatory investigation are also retained in IRFS." Hertel Decl. ¶ 6. Chavis gives no reason to doubt this assertion. So even if Chavis is correct about the existence of another database, the DEA's decision to rely on IRFS is still "reasonably calculated" because it would have captured records maintained in other systems. *Accord Kowal*, 464 F. Supp. 3d at 382 (rejecting argument that the DEA "failed to explain why it only searched IRFS . . . when it maintains additional records systems" based on the DEA's representations about IRFS).

*Third*, Chavis argues that "there are records . . . which would have been located and produced had a proper search been conducted." Pl.'s Cross-Mot. at 18. He claims, for example, that the DEA failed to produce records about an investigation into an associate of an individual

who spoke with Escobedo on the day he was murdered.  *Id.*  But Chavis must offer "positive indications of overlooked materials" to undermine the DEA's search.  *Valencia-Lucena v. U.S. Coast Guard*, 180 F.3d 321, 327 (D.C. Cir. 1999) (cleaned up).  This evidence falls well short. The investigation Chavis relies on does not appear to involve Sanchez.  And he offers little else to undermine the adequacy of the DEA's search.  Chavis does not highlight records in his possession that involve Sanchez and that the DEA did not produce.  And as explained, Chavis does not show that the DEA ignored another database likely to contain responsive materials.  The DEA's FOIA staff need not play detective.

Of course, a "reasonable and thorough search may have missed" documents responsive to Chavis's FOIA request.  *Iturralde*, 315 F.3d at 315.  But that alone does not make the DEA's search inadequate.  *Accord Kowal*, 464 F. Supp. 3d at 383 (rejecting argument that the DEA search was inadequate when the plaintiff claimed the DEA "did not produce any of the over two hundred items that she possesse[d] and that she allege[d] would have been responsive to her request" because the plaintiff did "not explain[] why, merely because *she* ha[d] them, DEA must also still have them such that it could produce them in response to a FOIA request").

The Court thus finds that the DEA conducted a search reasonably calculated to identify responsive records.

## B.

The Court next turns to whether the DEA properly justified its decisions to withhold information and documents under various FOIA exemptions.  It did.

The DEA did not disclose material under FOIA Exemptions 6, 7(C), 7(D), 7(E), and 7(F). Defs.' SOMF ¶ 16.  Chavis does not challenge the DEA's decision to invoke these exemptions.

14

So the Court need not walk through the withholdings under each.  The Court notes, however, that the DEA's withholdings were proper.

For example, the DEA applied Exemption 7(E) to withhold "Geo-Drug Enforcement Program ('G-DEP') identifiers, NADDIS numbers," and other "investigative reporting procedures."  Hertl Decl. ¶¶ 44–46.  Release of this information could allow "criminals [to] restructure their activities" or "identif[y] the investigative interest or priority" that the DEA assigns to its investigations, and criminals could "change their pattern of activity to avoid detection, apprehension, or create alibis for suspected activities."  *Id.* ¶ 49.  This information is routinely and appropriately withheld.  *Accord Higgins v. DOJ*, 919 F. Supp. 2d 131, 151 (D.D.C. 2013) (withholding G-DEP and NADDIS numbers under Exemption 7(E)); *Miller v. DOJ*, 872 F. Supp. 2d 12, 28–29 (D.D.C. 2012) (withholding NADDIS numbers under Exemption 7(E)).

The DEA also applied Exemptions 7(C), (D), and (F) to withhold names and other information about third parties, including "law enforcement personnel, witnesses, suspects, co-defendants and confidential sources of information."  Hertl Decl. ¶¶ 32, 38, 41–42, 51, 53.  The DEA represents that disclosure of this information "could subject [these third parties] to possible harassment, or focus derogatory inferences and suspicion upon them."  *Id.* ¶ 32.  Disclosure also "could reasonably be expected to reveal the identity of a confidential source or information furnished by a confidential source."  *Id.* ¶ 42.  Again, this third-party information is protected from disclosure.  *Accord Wilson*, 414 F. Supp. 2d at 14 ("DEA properly [withheld] the names and other identifying information pertaining to third parties" and the "[d]eletion of the names of federal, state and local law enforcement personnel under similar circumstances is routinely upheld").

That the FOIA request relates to Sanchez's post-conviction proceeding is immaterial. *See* Chavis Decl. ¶ 5 ("Mr. Sanchez asserted as one of his claims that the Government failed to disclose exculpatory and impeachment material pursuant to its obligation under *Brady v. Maryland*, 373 U.S. 83 (1963), and its progeny, at the time of the capital proceedings against him."). FOIA does not afford the same right to information as *Brady v. Maryland*, 373 U.S. 83 (1963) and other criminal disclosure requirements. *See Engelking v. DEA*, 119 F.3d 980, 980–81 (D.C. Cir. 1997) (per curiam) ("To the extent [the plaintiff] argues that he seeks exculpatory information, [his] personal need for information is immaterial to whether that information is protected from disclosure by one of the exemptions to the FOIA."); *see also EPIC v. Nat'l Sec. Comm'n on A.I.*, 466 F. Supp. 3d 100, 119 (D.D.C. 2020) (noting that agencies may be subject to differing disclosure regimes). Under FOIA, Sanchez's efforts to learn about his co-defendants is no different than any individual seeking information about a random person (or worse, an enemy). FOIA rightly does not condone these fishing expeditions, even for criminal defendants. *Accord Elgabrowny v. CIA*, --- F. Supp. 3d ---, 2020 WL 1451580, at *9–10 (D.D.C. Mar. 25, 2020) ("A plaintiff's personal interest in seeking documents that should have been produced and made available to him at his criminal trial . . . does not suffice." (cleaned up) (citing cases)).

Chavis only argues that the DEA's *Vaughn* index does not provide enough detail about the withheld material. He claims that the *Vaughn* index includes "terse, repetitive descriptions" that "provide little or no useful information about the individual documents in question." Pl.'s Cross-Mot. at 20–21. Chavis cites descriptions for documents that "are identical even though this purportedly encompasses three documents authored over the course of four months." *Id.* at 21. He argues that "[t]hese examples demonstrate the deficiency of the *Vaughn* index." *Id.* The Court disagrees.

The Circuit "has provided repeated instruction on the specificity required of a *Vaughn* index." *Morley v. CIA*, 508 F.3d 1108, 1122 (D.C. Cir. 2007).  The agency "must provide a relatively detailed justification, specifically identifying the reasons why a particular exemption is relevant and correlating those claims with the particular part of a withheld document to which they apply." *Id.* (cleaned up).  But agencies need not provide "repetitive, detailed explanations for each piece of withheld information—that is, codes and categories may be sufficiently particularized to carry the agency's burden of proof." *Id.* (cleaned up).  An agency has "the difficult obligation to justify its actions without compromising its original withholdings by disclosing too much information." *Judicial Watch, Inc.*, 449 F.3d at 146.

In *Morley*, the *Vaughn* index included an identification number, the document's subject, and the date.  508 F.3d at 1123.  The agency did not match each redaction with a specific exemption, but it did identify the exemptions claimed for each individual document. *Id.*  The Circuit found that "the descriptions of the documents in the *Vaughn* index, while categorical and with little variation from page to page, convey[ed] enough information for [the plaintiff] and the court to identify the records referenced and the basic reasoning behind the claimed exemptions." *Id.*

So too here.  The *Vaughn* index generally includes the document's Bates number, a date and description for each document, the information redacted and the reason(s) for the redactions, and the FOIA exemptions applied. *See* Defs.' Mot. Ex. I at 9–92.  Indeed, Chavis does not dispute that the "*Vaughn* index identifies the FOIA exemptions pursuant to which responsive records were withheld; describes the content of the documents to the extent possible; and specifies the bases for the invoked exemptions." Defs.' SOMF ¶ 37.  This alone can end the Court's inquiry. *See* LCvR 7(h)(1); *Jackson*, 101 F.3d at 154.

But consider also the *Vaughn* index entries that Chavis characterizes as deficient.[8] Pl.'s Cross-Mot. at 20–21. These entries explain the FOIA exemptions that the DEA applied to withhold multiple documents described as "DEA-6 (Report of Investigation) Regarding Debrief[ing] of Third Party and Acquisition of Exhibit[s]." *See* Defs.' Mot. Ex. I at 33–34 (Bates 89–98), 35–37 (Bates 99–104), 45–47 (Bates 166–74), 54–56 (Bates 206–13), 58–59 (Bates 220–28), 61–63 (Bates 232–40), 63–65 (Bates 241–48).

The entries reflect that the DEA withheld these documents under FOIA Exemptions 6, 7(C), 7(D) and that it applied FOIA Exemptions 6, 7(C), 7(E), and 7(F) to redact certain information throughout. *See, e.g., id.* at 35 (Bates 99–104). The entries articulate the type of information covered under each FOIA exemption. For example, the DEA redacted the G-DEP identifier and file number at the top of each page, as well as NADDIS information under Exemption 7(E). *See, e.g., id.* at 45 (Bates 166–74). The DEA also redacted "names, signatures, and initials of law enforcement personnel who submitted and signed this document" under Exemptions 6, 7(C), and 7(F). *Id.*

More, the entries provide the *reason(s)* each claimed FOIA exemption applies. The DEA asserts, for example, that Exemption 7(D) justifies withholding the entire document. The DEA represents that the "source of information in this document is an individual about whom, based upon the facts and circumstances, confidentiality was implied." *See, e.g., id.* at 59 (Bates 220–28). So it is "presumed that the individual would not have provided the information unless they believed that the information and their identity would be held in confidence and not released to

---

[8]  Chavis states that these "examples are just an illustration and certainly do not comprise the sum of the many deficiencies within the *Vaughn* Index." Pl.'s Cross-Mot. at 21. But it is not the Court's task to sift through the record to identify the "many deficiencies" that Chavis vaguely alludes to here. *See Jones*, 835 F.3d at 83; *Jeffries*, 965 F.3d at 860–61. The Court thus focuses only on the examples and purported deficiencies that Chavis raises in his brief.

[Chavis] or the public, except as required by law." *Id.*  The DEA explains that the "revelation of any of this law enforcement sensitive document could lead to the exposure of third parties and sources, or the activities they were involved in, such that the entire document is not segregable." *See, e.g.*, *id.* at 64 (Bates 241–48).  And it states that disclosure would "have a chilling effect on the use of these individuals in subsequent investigations if their names or identifying information were revealed, and could lead to harm."[9] *Id.* at 65 (Bates 241–48).

That the DEA relied on similar (or the same) descriptions to justify its withholdings in these documents does not help Chavis.  *See* Pl.'s Cross-Mot. at 20–21.  The records that Chavis seeks "are criminal investigatory data compiled for law enforcement purposes."  Hertel Decl. ¶ 28.  It is unsurprising then that the same exemptions prevent disclosure of similar (or the same) information.  *Cf. Hodge v. FBI*, 764 F. Supp. 2d 134, 144 (D.D.C. 2011), *aff'd*, 703 F.3d 575 (D.C. Cir. 2013) ("Further, given the nature of the material—investigative reports—it is not surprising that information would fall within multiple exemptions.").

Recall that all the entries Chavis identifies as "terse" and "repetitive" describe withholdings for the same type of document:  "DEA-6 (Report of Investigation) Regarding Debrief[ing] of Third Party and Acquisition of Exhibit[s]."  *See, e.g.*, Defs.' Mot. Ex. I at 33 (Bates 88–98), 35 (Bates 99–104), 45 (Bates 166–74), 54 (Bates 206–13).  So "[i]t is plausible, if not expected, that the same type of information in [these documents] is redacted for the same reason."  *Am. Immigr. Laws. Ass'n v. U.S. Dep't of Homeland Sec.*, 485 F. Supp. 3d 100, 110 (D.D.C. 2020).  FOIA does not prohibit the DEA from recycling explanations if the same reasoning applies to withhold information across multiple documents.  *Cf. Judicial Watch, Inc.*,

---

[9]  For these reasons, the Court finds that the *Vaughn* index here is different from the one rejected in *Kowal*.  464 F. Supp. 3d at 384 (finding *Vaughn* index deficient because the court could not "tell whether the DEA ha[d] properly invoked the asserted FOIA exemptions").

449 F.3d at 147 ("The FDA explained itself through *commonalities*, not *generalities*. Unsurprisingly, among thousands of withheld documents, certain topics and exemptions arose on multiple occasions.").

The Court thus finds that the *Vaughn* index includes enough detail "to identify the records referenced and the basic reasoning behind the claimed exemptions," even if there is "little variation from page to page." *Morley*, 508 F.3d at 1123.

## C.

Finally, the Court must decide whether the DEA complied with FOIA's segregability requirement.  It has.

FOIA requires an agency to produce "[a]ny reasonably segregable portion of a record . . . after deletion of the portions which are exempt."  5 U.S.C. § 552(b).  "In order to demonstrate that all reasonably segregable material has been released, the agency must provide a detailed justification for its non-segregability."  *Johnson v. Exec. Off. for U.S. Att'ys*, 310 F.3d 771, 776 (D.C. Cir. 2002) (cleaned up).  An agency receives "a presumption that [it] complied with the obligation to disclose reasonably segregable material," which a plaintiff may rebut only with a "quantum of evidence."  *Sussman v. U.S. Marshals Serv.*, 494 F.3d 1106, 1117 (D.C. Cir. 2007).

The "DEA examined each responsive page to determine whether there was any reasonably segregable information and all reasonably segregable information was released." Defs.' SOMF   ¶ 39.  Chavis does not dispute this (or any other) fact.  His concession alone is enough to find that the DEA satisfied its segregability obligation.  *See* LCvR 7(h)(1); *Jackson*, 101 F.3d at 154.

In any event, the DEA also offers "detailed justification" for why withheld material was not reasonably segregable.  The DEA represents that "[e]ach page was examined to determine whether there was any reasonably segregable information."  Hertel Decl. ¶ 60.  It states that:

> All responsive information was examined to determine whether any reasonably segregable information could be released.  Pages were withheld in their entirety where, based upon the review, the release of any additional information would: (1) provide no useful information, or incomprehensible words or phrases that would not shed any light on how the Government conducts business; (2) result in compromising the identity of and information provided by sources of information who were granted express or implied confidentiality; (3) be an unwarranted invasion of personal privacy when balanced against the public interest in the release of information gathered during the course of a criminal investigation; (4) disclose techniques and procedures for law enforcement investigations or prosecutions; or (5) place in jeopardy the lives and safety of third parties which includes sources of information, individuals associated with or mentioned in, the investigative reports, and DEA agents.

*Id.* ¶ 59.

The DEA also addresses segregability in its *Vaughn* index.  It represents in various entries that "[t]o the extent such information described in [a] document [] was segregable, it was released."  *See* Defs.' Mot. Ex. I at 17 (Bates 23–24), 18 (Bates 35–39), 38 (Bates 105–15), 41 (Bates 132–37), 42 (Bates 145–54), 44 (Bates 162–63), 50 (Bates 181–88).  For withheld documents, the DEA states that "[t]he revelation of any portion of this law enforcement sensitive document could lead to the exposure of third parties and sources, or the activities they were involved in, such that the entire document is not segregable."  *Id.* at 14 (Bates 10–20), 35 (Bates 88–98), 47 (Bates 166–74), 52 (Bates 189–98), 81 (Bates 279–82), 92 (Bates 2–4).  And the *Vaughn* index otherwise describes in reasonable detail the information withheld and the reasons for doing so.

The Court thus finds that the "combination of the *Vaughn* index and the affidavit[] . . . are sufficient to fulfill the [DEA's] obligation to show with 'reasonable specificity' why a document

cannot be further segregated." *Johnson*, 310 F.3d at 776; *accord Am. Immigr. Laws. Ass'n*, 485 F. Supp. 3d at 113 (finding combination of declaration and *Vaughn* index sufficient to satisfy segregability requirement); *Abdelfattah v. U.S. Immigr. & Customs Enf't*, 851 F. Supp. 2d 141, 146 (D.D.C. 2012) (same).

Chavis claims that the "*ipse dixit* declaration cannot be sufficient to carry the Government's burden of demonstrating it properly determined that there were no segregable portions of documents to be disclosed." Pl.'s Cross-Mot. at 22.  But Chavis offers no "quantum of evidence" to rebut the presumption the DEA receives here.  *Sussman*, 494 F.3d at 1117.  His conclusory assertions are not enough.[10]  *Accord Abdelfattah*, 851 F. Supp. 2d at 146.

## IV.

For all these reasons, the Court will grant Defendants' motion for summary judgment and deny Plaintiff's cross-motion for summary judgment.  A separate Order will issue.

Dated:  April 28, 2021

_____
TREVOR N. McFADDEN, U.S.D.J.

---

[10]  Chavis does not mention his Privacy Act claims in his summary judgment motion.  *See* Compl. ¶¶ 40–55.  So it is unclear whether he still pursues them.  If he does, the Government is entitled to summary judgment on these claims as well.  The "DEA has promulgated regulations at 28 C.F.R. § 16.98 which exempt IRFS records from the [Privacy Act]'s access provisions." Hertl Decl. ¶ 30.  "Because the DEA has properly promulgated regulations exempting its records database from the Privacy Act's disclosure provisions, the DEA properly withheld materials pursuant to Privacy Act Exemption (j)(2)."  *Burnett v. DEA*, No. 19-cv-00870 (CJN), 2021 WL 1209142, at *3 (D.D.C. Mar. 31, 2021) (cleaned up); *see also Garza v. U.S. Marshals Serv.*, No. 16-0976, 2018 WL 4680205, at *10 (D.D.C. Sept. 28, 2018) (recognizing that the DEA's decision to exempt IRFS records from the Privacy Act's access provision "has been consistently upheld by this Court." (citing cases)), *aff'd sub nom. Garza v. United States Marshals Serv.*, No. 18-5311, 2020 WL 768221 (D.C. Cir. Jan. 22, 2020).